UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ALIDA URIZAR SANTIAGOS, on behalf of herself
and all others similarly situated,

                        Plaintiff,

              -against-

GEMSTONE SUPERMARKETS INC. d/b/a KEY
FOOD SUPERMARKETS, DAVID MANDELL, and
RAYMOND NEGRON,

                        Defendants.
------------------------------------------------------------------------X

No. 20 Civ. 1934

**COMPLAINT**

**FLSA COLLECTIVE AND
RULE 23 CLASS ACTION**

Plaintiff Alida Urizar Santiagos ("Plaintiff" or "Urizar"), on behalf of herself and all others similarly situated, by her attorneys Pechman Law Group PLLC, complaining of Defendants Gemstone Supermarkets Inc. d/b/a Key Food Supermarkets, David Mandell, and Raymond Negron (collectively, "Defendants"), alleges:

**NATURE OF THE ACTION**

1. Throughout her six years employed as a stocker in the meat department at Key Food supermarket in Jamaica, Queens, Urizar worked hours in excess of 40 per workweek but was not paid overtime wages as required by the Fair Labor Standards Act and the New York Labor Law. Defendants paid Urizar and other non-exempt, non-managerial employees of Gemstone Supermarkets Inc. ("Supermarket Workers") at "straight-time" rates, thereby failing to pay them overtime wages for hours worked over 40 per workweek. Defendants also engaged in a practice of time-shaving by rounding the hours worked by Urizar and the Supermarket Workers down to the nearest half hour for purposes of calculating their compensation. Defendants failed to furnish Urizar and other Supermarket Workers with wage notices at their time of hiring or whenever their wage rates changed reflecting, *inter alia*, their hourly and overtime wage rates.

Defendants failed to provide Urizar and other Supermarket Workers with accurate wage statements accompanying each payment of wages reflecting, *inter alia*, their hours worked and regular and overtime wage rates.

2. Urizar brings this action on behalf of herself and all other similarly situated Supermarket Workers seeking declaratory and injunctive relief and the recovery of unpaid minimum and overtime wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York labor Law, N.Y. Lab. L. § 190 *et seq.* ("NYLL").

## JURISDICTION

3. The Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Urizar's claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

4. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391, because Defendants conduct business in the Eastern District of New York and the events and omissions giving rise to Urizar's claims occurred in the Eastern District of New York.

## THE PARTIES

**Plaintiff Alida Urizar Santiagos**

5. Urizar resides in Queens County, New York.

6. Defendants employed Urizar as a stocker in the meat department at the Key Food Supermarket located at 183-14 Hillside Avenue, Jamaica, New York 11432 ("Key Food Jamaica") from approximately January 2014 until February 10, 2020.

7. Throughout her employment, Urizar was an employee engaged in interstate commerce or in the production of goods for interstate commerce.

2

**Defendant Gemstone Supermarkets Inc.**

8. Gemstone Supermarkets Inc. ("Gemstone") is a New York corporation that owns, operates, and does business as Key Food Supermarkets.

9. Gemstone owns and operates Key Food Jamaica.

10. Gemstone's New York State Division of Corporation's corporate entity filing identifies Key Food Jamaica as the location of Gemstone's principal executive office.

11. Gemstone also owns and operates at least two additional Key Food Supermarket locations at 61-50 Springfield Blvd., Bayside, New York 11364 ("Key Food Bayside") and 164-05 69th Avenue, Flushing, New York 11365 ("Key Food Flushing") (collectively with Key Food Jamaica, the "Key Food Supermarkets").

12. Gemstone operates the Key Food Supermarkets as a single employer with an integrated operation, common purchasing and pricing strategies, interchange of employees, common ownership and management, and a common employee relations policy.

13. For example, David Mandell and Raymond Negron are responsible for managing employee relations across the three Key Food Supermarkets locations, including by hiring and firing of employees, implementing employee discipline, and setting employee wages and schedules.

14. For example, Defendants transfer Supermarket Workers among the different Key Food Supermarkets locations for work assignments.

15. The Key Food Supermarkets share a common website— http://www.gemstonesupermarkets.com/ (last accessed April 24, 2020)—and a common email address (shop@keyfoodman.com) for contact with their corporate office and for catering services.

16. The common website permits customers to order and receive delivery from any of the three Key Food Supermarkets locations.

17. The Key Food Supermarkets share a common corporate office and central telephone number.

18. The New York State Liquor Authority's Division of Alcoholic Beverage Control identifies Gemstone as the holder of a liquor license at each of the Key Food Supermarkets locations.

19. Gemstone has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

20. In the three years preceding the date this Complaint was filed, Gemstone had an annual gross volume of sales in excess of $500,000.

**Defendant David Mandell**

21. Mandell is the owner, President, and Chief Executive Officer of Gemstone.

22. Mandell is listed as the Chief Executive Officer of Gemstone on Gemstone's New York State Division of Corporations corporate entity filing.

23. Mandell is listed as Gemstone's point of contact for "Employee and Vendor Questions" on Gemstone's website. *See* Gemstone Supermarket Group, Contact/Hrs, http://www.gemstonesupermarkets.com/ (last accessed April 24, 2020).

24. Mandell has held himself out as the owner of Gemstone in the press. *See, e.g.*, David Beltran, *Rally to Keep Key Food in Flushing*, QNS, Feb. 8, 2012, https://qns.com/story/2012/02/08/rally-to-keep-key-food-in-flushing/ (last accessed April 24, 2020).

25. Mandell held and exercised power and authority over personnel decisions at Gemstone and the Key Food Supermarkets, including the power to discipline employees, hire and fire employees, set employee schedules, set employee wage rates, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

26. Mandell personally exercised power and authority to, *inter alia*, "ensur[e] exceptional merchandising of products, store cleanliness and employee engagement," and to "[s]upervise store management[.]" *See* Dave Mandell LinkedIn Profile, https://www.linkedin.com/in/dave-mandell-6a152811 (last accessed April 24, 2020).

27. Mandell also exercised this power and authority through managers at the Key Food Supermarkets locations, including Key Food Jamaica managers Raymond Negron ("Negron") and Heather Weisman ("Weisman").

28. Mandell held meetings with managers at Key Food Supermarkets locations to establish policies, direct operations, and manage employee relations.

29. For example, Mandell directed Weisman to fire Gemstone employees at Key Food Jamaica during periods when business was slow.

30. For example, Mandell directed Weisman to alter the work schedules of Gemstone employees at Key Food Jamaica.

31. Mandell exercised sufficient control over Gemstone's operations and Urizar's and the Supermarket Workers' employment to be considered Urizar's and the Supermarket Workers' employer under the FLSA and NYLL.

**Defendant Raymond Negron**

32. Raymond Negron ("Negron") is a Gemstone manager.

33. Throughout Urizar's employment, Negron was actively involved in managing the day-to-day operations at Key Food Jamaica.

5

34. Negron was also actively involved in managing the day-to-day operations at the other Key Food Supermarkets.

35. Negron was present at Key Food Jamaica on a weekly basis.

36. Negron held and exercised power and authority over personnel decisions at Gemstone, including the power to hire and fire employees, set employee wages and schedules, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

37. Negron hired and fired Urizar and other Supermarket Workers.

38. Negron set Urizar's and other Supermarket Workers' schedules.

39. For example, approximately four weeks before Urizar was fired, Negron assigned new work schedules to Urizar and other Supermarket Workers.

40. Negron set Urizar's and other Supermarket Workers' wage rates.

41. Negron maintained the time and wage records of Gemstone employees.

42. Negron exercised sufficient control over Gemstone's operations and Urizar's and the Supermarket Workers' employment to be considered Urizar's and the Supermarket Workers' employer under the FLSA and NYLL.

**FACTUAL ALLEGATIONS**

**Urizar's Hours and Pay**

43. Throughout Urizar's employment, Key Food Jamaica was open for business from 7:00 a.m. to 9:45 p.m. on Mondays through Saturdays, and from 7:00 a.m. to 9:00 p.m. on Sundays.

44. From the start of her employment in or around January 2014 until January 2019, Urizar worked a regular schedule of nine-hour shifts (8:00 a.m. to 5:00 p.m.) with a one-hour lunch break, six days per week, for a total of approximately 48 hours per workweek.

45. For example, Urizar worked: (a) from 8:00 a.m. to 5:00 p.m. with a one-hour break on February 2, 2015; (b) from 8:00 a.m. to 5:00 p.m. on February 3, 2015 with a one-hour break on February 3, 2015; (c) from 8:00 a.m. to 5:00 p.m. with a one-hour break on February 4, 2015; (d) from 8:00 a.m. to 5:00 p.m. with a one-hour break on February 5, 2015; (e) from 8:00 a.m. to 5:00 p.m. with a one-hour break on February 6, 2015; and (f) from 8:00 a.m. to 5:00 p.m. with a one-hour break on February 7, 2015, for a total of 48 hours during the workweek.

46. For approximately three months each year during the period from January 2014 until approximately January 2019, Urizar worked nine-hour shifts (8:00 a.m. to 5:00 p.m.) with a one-hour lunch break, seven days per week, for a total of approximately 56 hours per workweek.

47. For example, Urizar worked: (a) from 8:00 a.m. to 5:00 p.m. with a one-hour break on August 16, 2015; (b) from 8:00 a.m. to 5:00 p.m. with a one-hour break on August 17, 2015; (c) from 8:00 a.m. to 5:00 p.m. with a one-hour break on August 18, 2015; (d) from 8:00 a.m. to 5:00 p.m. with a one-hour break on August 19, 2015; (e) from 8:00 a.m. to 5:00 p.m. with a one-hour break on August 20, 2015; (f) from 8:00 a.m. to 5:00 p.m. with a one-hour break on August 21, 2015; and (g) from 8:00 a.m. to 5:00 p.m. with a one-hour break on August 22, 2015, for a total of 56 hours during the workweek.

48. Beginning in approximately January 2019 through the end of Urizar's employment on February 10, 2020, Urizar regularly worked eight-hour shifts with a one-hour break three days per week, seven-hour shifts with a one-hour break two days per week, and a nine-hour shift with a one-hour break one day per week, for a total of approximately 41 hours per workweek.

49. For example, Urizar worked: (a) from 8:00 a.m. to 4:00 p.m. with a one-hour break on January 6, 2020; (b) from 8:00 a.m. to 4:00 p.m. with a one-hour break on

January 7, 2020; (c) from from 8:00 a.m. to 4:00 p.m. with a one-hour break on January 8, 2020; (d) from 8:00 a.m. to 3:00 p.m. with a one-hour break on January 9, 2020; (e) from 7:00 a.m. to 4:00 p.m. with a one-hour break on January 10, 2020; and (f) from 8:00 a.m. to 3:00 p.m. with a one-hour break on January 11, 2020, for a total of 41 hours during the workweek.

50. Throughout her employment, Defendants failed to pay Urizar for all hours she worked per workweek by engaging in a practice of time-shaving.

51. Defendants shaved time by rounding Urizar's daily work hours down to the nearest half hour for purposes of calculating compensation if she punched out of work more than five minutes before the end of her scheduled shift.

52. For example, if Urizar punched in to work at 8:00 a.m. and punched out of work at 4:54 p.m., Defendants only compensated Urizar for hours worked from 8:00 a.m. to 4:30 p.m. (minus her one-hour lunch break).

53. When Urizar raised concerns about Defendants' time shaving practices with Negron, Negron informed Urizar that she needed to punch out correctly.

54. Urizar was informed by other Supermarket Workers that Defendants were similarly shaving time from their hours worked for purposes of calculating compensation.

55. Throughout her employment, Defendants paid Urizar straight-time at the statutory minimum wage rate for large employers in New York City for the hours recorded on the time keeping system, including for hours recorded in excess of 40 per workweek.

56. From January 2014 through December 2016, Defendants paid Urizar $9.00 per hour, including hours recorded in excess of 40 per workweek.

57. From January 2017 through December 2017, Defendants paid Urizar $11.00 per hour, including hours recorded in excess of 40 per workweek.

58. From January 2018 through December 2018, Defendants paid Urizar $13.00 per hour, including hours recorded in excess of 40 per workweek.

59. From January 2019 through the end of her employment of February 10, 2020, Defendants paid Urizar $15.00 per hour, including hours recorded in excess of 40 per workweek.

60. Defendants did not pay Urizar overtime wages at a rate of at least one and one-half (1.5) times her regular wage rate for hours she worked in excess of 40 per workweek.

61. Defendants did not furnish Urizar with wage notices at the time of her hire or whenever there was a change in her wage rate.

62. Defendants paid Urizar her weekly wages in cash without accompanying accurate wage statements reflecting, *inter alia*, her regular and overtimes wage rates and hours worked.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

63. Urizar brings the claims in this Complaint arising out of the FLSA on behalf of herself and all similarly situated Supermarket Workers employed by Gemstone in the three years prior to the filing of this action who elect to opt-in to this action (the "FLSA Collective").

64. The FLSA Collective consists of at least 85 similarly situated Supermarket Workers who have been victims of Defendants' common policies and practices violating their rights under the FLSA by, *inter alia*, willfully denying them overtime wages.

65. The FLSA Collective consists of persons who, during their employment with Defendants, fell into the category of non-exempt, non-managerial supermarket employees.

66. Urizar and the FLSA Collective are entitled to overtime wages under the FLSA, but were denied overtime wages by Defendants for hours worked in excess of 40 per workweek.

67. Urizar and the FLSA Collective are and have been similarly situated, have had substantially similar pay provisions, and are and have been subject to Defendants' decisions, plans, and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them at the legally required overtime wage rates for hours worked over 40 per workweek. Urizar's claims as stated in this Complaint are essentially the same as those of the FLSA Collective.

68. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly harmed the FLSA Collective by engaging in patterns, practices, and/or policies violating the FLSA and the NYLL. These patterns, practices, and/or policies include, *inter alia*:

   a. failing to pay the FLSA Collective overtime wages for hours worked in excess of 40 per workweek; and

   b. failing to keep full and accurate records of all hours worked by the FLSA Collective, as required by the FLSA.

69. Defendants engaged in this unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees their compensation.

70. Defendants' conduct has been intentional, willful, and in bad faith, and has caused significant monetary damage to the FLSA Collective.

71. Defendants' practices and policies with respect to the payment of overtime wages have previously been the subject of a lawsuit filed in the Eastern District of New York. *See Rivera v. Gemstone Supermarkets Inc., et al.*, No. 18-cv-05770 (RER).

72. The FLSA Collective would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join the present lawsuit.

73. Those similarly situated employees are known to Defendants and are readily identifiable and locatable through Gemstone's records.

74. Those similarly situated employees should be notified of and allowed to opt into this action pursuant to 29 U.S.C. § 216(b).

## RULE 23 CLASS ACTION ALLEGATIONS

75. Urizar brings the claims in this Complaint arising out of the NYLL under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), on behalf of herself and a class consisting of all similarly situated Supermarket Workers employed by Gemstone in the past six years (the "Rule 23 Class").

76. The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

77. The size of the Rule 23 Class is at least 85 individuals, although the precise number of such employees is unknown. Facts supporting the calculation of that number are presently within the sole control of Defendants. The hours assigned and worked, the positions held, the rates of pay, and pay received for each Rule 23 Class member are also determinable from Defendants' records. For purposes of notice in this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

78. Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the Rule 23 Class as a whole. All the class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay all minimum and overtime wages due, failing to provide wage notices at the time of hire or when wage rates changed, and failing to furnish accurate wage statements. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Urizar and other class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

79. Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually including, *inter alia*, the following:

    a. whether Defendants employed the Rule 23 Class within the meaning of the NYLL;

    b. whether Defendants compensated the Rule 23 Class for all hours worked up to 40 per workweek at the statutory minimum wage rate under the NYLL;

    c. whether Defendants compensated the Rule 23 Class at the appropriate overtime wage rate for all hours worked in excess of 40 per workweek as required by the NYLL;

    d. whether Defendants violated NYLL Article 6, § 190, *et seq.*, and Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142, as alleged herein;

    e. whether Defendants failed to provide wage notices to the Rule 23 Class at the time of hire and when their wage rates changed as required by the NYLL; and

    f. whether Defendants failed to provide the Rule 23 Class with accurate wage statements as required by the NYLL.

80. Urizar's claims are typical of the claims of the Rule 23 Class she seeks to represent.

81. Urizar and the Rule 23 Class work or have worked for Defendants as Supermarket Workers within the six years prior to the filing of this action.

82. Urizar and the Rule 23 Class are entitled under the NYLL to be paid minimum and overtime wages, but were denied minimum and overtime wages by Defendants.

83. Urizar and the Rule 23 Class are entitled under the NYLL to receive wage notices at their time of hire and when their wage rates change and to receive accurate wage statements each time they are paid, but were not provided with wage notices or wage statements by Defendants.

84. Urizar and the Rule 23 Class have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

85. Urizar and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

86. Urizar will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

87. Urizar has retained counsel competent and experienced in wage and hour litigation and class action litigation.

88. There is no conflict between Urizar and the Rule 23 Class members.

89. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures. Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual employees lack the

financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.

90. Class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

91. This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**FIRST CLAIM**
**(NYLL – Unpaid Minimum Wages)**

92. Urizar repeats and incorporates all foregoing paragraphs as if fully set forth herein.

93. The NYLL and supporting New York State Department of Labor ("NYDOL") regulations require employers to pay employees a minimum wage for the first 40 hours worked in a workweek. NYLL § 652; 12 N.Y.C.R.R. § 142-2.1.

94. Defendants are employers within the meaning of the NYLL §§ 190, 651(6), and 652, and NYDOL regulations, including but not limited to 12 N.Y.C.C.R. § 142.

95. Defendants employed Urizar and the Rule 23 Class within the meaning of the NYLL.

96. As a result of Defendants' time-shaving practices as described herein, Defendants failed to pay Urizar and the Rule 23 Class the minimum wages to which they were entitled under the NYLL and its supporting NYDOL regulations.

97. Specifically, Defendants shaved time by rounding Urizar's and the Supermarket Worker's daily work hours down to the nearest half hour for purposes of

calculating compensation if they punched out of work more than five minutes before the end of their scheduled shifts.

98. Defendants' time-shaving practice resulted in a failure to compensate Urizar and the Supermarket Workers at the applicable statutory minimum wage rate for their hours worked.

99. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Urizar and the Rule 23 Class minimum wages.

100. As a result of Defendants' willful violations of the NYLL, Urizar and the Rule 23 Class suffered damages and are entitled to recover their unpaid minimum wages, liquidated damages, pre- and post-judgment interest, and reasonable attorney's fees and costs.

**SECOND CLAIM**
**(FLSA – Unpaid Overtime Wages)**

101. Urizar repeats and incorporates all foregoing paragraphs as if fully set forth herein.

102. The FLSA requires employers to pay employees overtime wages at a rate not less than one and one-half (1.5) times the employee's regular rate for all hours worked in excess of 40 hours per workweek. 29 U.S.C. § 207, *et seq*.

103. Defendants are employers within the meaning of the FLSA, 29 U.S.C. § 203(d), and employed Urizar and the FLSA Collective.

104. Urizar and the FLSA Collective are employees within the meaning of the FLSA, 29 U.S.C. § 203(e).

105. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Urizar and the FLSA Collective overtime wages at a rate not less than one

and one-half (1.5) times their regular rate for all hours worked in excess of 40 hours per workweek.

106. Defendants were or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Urizar and the FLSA Collective.

107. As a result of Defendants' willful violations of the FLSA, Urizar and the FLSA Collective suffered damages and are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorney's fees and costs.

## THIRD CLAIM
### (NYLL – Unpaid Overtime Wages)

108. Urizar repeats and incorporates all foregoing paragraphs as if fully set forth herein.

109. The NYLL and supporting NYDOL regulations require employers to pay employees overtime wages at a rate of one and one-half (1.5) times the employee's regular rate for all hours worked in excess of 40 per workweek. 12 N.Y.C.C.R. § 142-2.2.

110. Defendants are employers within the meaning of the NYLL §§ 190, 651(6), and 652, and NYDOL regulations, including but not limited to 12 N.Y.C.C.R. § 142.

111. Defendants employed Urizar and the Rule 23 Class within the meaning of the NYLL.

112. Defendants failed to pay Urizar and the Rule 23 Class overtime wages to which they were entitled under the NYLL and its supporting NYDOL regulations.

113. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Urizar and the Rule 23 Class overtime wages.

114. As a result of Defendants' willful violations of the NYLL, Urizar and the Rule 23 Class suffered damages and are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorney's fees and costs.

**FOURTH CLAIM**
**(NYLL Wage Theft Prevention Act – Failure to Provide Wage Notices)**

115. Urizar repeats and incorporates all foregoing paragraphs as if fully set forth herein.

116. The NYLL and the Wage Theft Prevention Act ("WTPA") require employers to provide all employees with a written notice of wage rates at the time of hiring and whenever there is a change to an employee's rate of pay. NYLL § 195(1).

117. In violation of NYLL 195(1), Defendants failed to furnish Urizar and the Rule 23 Class at their time of hiring or whenever their rates of pay changed with a wage notice containing their rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and any other information required by law.

118. As a result of Defendants' violations of NYLL § 195(1), Urizar and the Rule 23 Class are entitled to recover statutory damages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to NYLL § 198(1-b).

## FIFTH CLAIM
### (NYLL Wage Theft Prevention Act – Failure to Provide Accurate Wage Statements)

119. Urizar repeats and incorporates all foregoing paragraphs as if fully set forth herein.

120. The NYLL requires employers to provide employees with an accurate wage statement each time they are paid. N.Y. Lab. Law § 195(3).

121. In violation of the NYLL, Defendants failed to furnish Urizar and the Rule 23 Class with each payment of wages an accurate statement listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

122. As a result of Defendants' violations of NYLL § 195(3), Urizar and the Rule 23 Class are entitled to recover statutory damages, reasonable attorneys' fees, and costs and disbursements of this action pursuant to NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Urizar, on behalf of herself, the FLSA Collective, and the Rule 23 Class respectfully requests that this Court enter a judgment:

a. certifying the case as a collective action for the violations of the FLSA alleged in the Complaint for the employees described herein; designating Urizar as the representative of the FLSA Collective; and designating Urizar's attorneys as counsel for the FLSA Collective;

b. certifying the case as a class action pursuant to the NYLL and Rule 23 of the Federal Rules of Civil Procedure as it pertains to all NYLL claims set forth in the Complaint for the class of employees described herein, certifying Urizar as class representative, and designating Urizar's attorneys as Class counsel;

c. authorizing the issuance of notice at the earliest possible time to all non-exempt, non-managerial Supermarket Workers that were employed by Defendants during the three years immediately preceding the filing of this action. This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

d. declaring that Defendants have violated the minimum wage provisions of the NYLL;

e. declaring that Defendants have violated the overtime wage provisions of the FLSA and the NYLL;

f. declaring that Defendants have violated the wage notice provisions of the NYLL and WTPA;

g. declaring that Defendants have violated the wage statement provisions of the NYLL and WTPA;

h. declaring that Defendants' violations of the FLSA and NYLL were willful;

i. enjoining future violations of the FLSA and NYLL by Defendants;

j. awarding Urizar and the Rule 23 Class unpaid minimum wages;

k. awarding Urizar, the FLSA Collective, and the Rule 23 Class unpaid overtime wages;

l. awarding Urizar, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and NYLL;

m. awarding Urizar and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish wage notices pursuant to the NYLL and WTPA;

n. awarding Urizar and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish accurate wage statements pursuant to the NYLL and the WTPA;

o. awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class pre- and post-judgment interest under the FLSA and the NYLL;

p. awarding reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

q. awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York
      April 27, 2020

                            PECHMAN LAW GROUP PLLC

                          By:    /s/ Louis Pechman
                                  Louis Pechman
                                  Galen C. Baynes
                                  488 Madison Avenue, 17th Floor
                                  New York, New York 10022
                                  Tel.: (212) 583-9500
                                  pechman@pechmanlaw.com
                                  baynes@pechmanlaw.com
                                  *Attorneys for Plaintiff, the Rule 23 Class, and the FLSA Collective*